**HANNABERRY HVAC and Donegal Mutual Insurance Companies, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SNYDER, JR.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 7, 2000.

Decided Jan. 24, 2001.

Brian J. Lenahan, Scranton, for petitioner.

Turrey A. Kepler, Norristown, for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge, LEDERER, Senior Judge.

DOYLE, President Judge.

Hannaberry HVAC and Donegal Mutual Insurance Company (collectively referred to as Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed a Workers' Compensation Judge's (WCJ) decision to modify the average weekly wage calculation of Charles Snyder (Claimant) from $229.43 to $473.65, which resulted in a higher compensation benefit rate.

The relevant facts are not in dispute. Claimant worked on a part-time basis for Employer while attending high school. Claimant's work schedule varied greatly during his part-time employment. On June 20, 1996, after graduating from high school, Claimant accepted a full-time position with Employer. On September 20, 1996, Claimant sustained a work-related

injury that rendered him a quadriplegic. At the time of the accident, Claimant was employed full-time by Employer for only one complete calendar quarter.

Employer issued a notice of compensation payable acknowledging an injury to Claimant's spinal cord and initially calculated the average weekly wage as $207.03 with a corresponding compensation rate of $186.33. Claimant filed a claim petition challenging Employer's computation of the average weekly wage, and, during the litigation, Employer amended the average weekly wage to $229.43 with a corresponding compensation benefit rate of $206.49. Claimant maintains that the amended average weekly wage is incorrect.

Employer based its calculation of the average weekly wage on Claimant's full year of employment leading up to the injury, which included his part-time employment while attending high school. Claimant asserts, however, that his average weekly wage should be calculated based solely upon his one quarter of full-time employment, from June 20, 1996 to September 20, 1996. It is Claimant's position that by including his part-time employment such calculation will "artificially decrease his accurate weekly wage earned as a full time employee and will result in severely insufficient compensation for the duration of his life." (Claimant's brief at 3.)

In his decision and order dated April 30, 1998, the WCJ agreed with Claimant's position, and ruled that the average weekly wage should be based solely on Claimant's last quarter of full-time employment. As a result, the WCJ adopted the average weekly wage of $473.65 with a corresponding compensation rate of $315.76. In his opinion, the WCJ recognized that the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626, does not distinguish between part-time and full-time employment in calculating the average weekly wage. Nonetheless, the WCJ concluded the following:

> [W]e believe that those distinctions [between high school student and adult member of work force] are so dramatic and the result of the failure to recognize them so manifestly unfair that it is necessary to distinguish the claimant's employment on a part-time basis as a full-time student from his full-time employment as an adult and therefore, because only the claimant's earnings from June 20, 1996 to September 20, 1996 were earned as a full-time adult member of the work force, only that quarter shall be considered in determining the average weekly wage.

(WCJ's opinion at 5.) Employer subsequently appealed to the Board, and the Board, recognizing the humanitarian intent of the Act, affirmed the WCJ on the basis of the WCJ's rationale. This appeal followed.[1]

The issue presented seems to be one of first impression. We begin our analysis with an examination of the relevant sections of the Act, as well as the parties' arguments. Section 306(a) of the Act provides the following framework for the calculation of total disability payments: "For total disability, sixty-six and two-thirds per centum of the **wages** of the injured employe as defined in section 309 beginning after the seventh day of total disability, and payable for the duration of total disability ..." 77 P.S. § 511(1) (emphasis added). The amended Section 309 of the Act, 77 P.S. § 582, defines the term "wages," in pertinent part, as follows:[2]

---

1. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Oaks v. Workers' Compensation Appeal Board (LTV Steel Corp.),* 720 A.2d 836 (Pa.Cmwlth.1998),

*petition for allowance of appeal denied,* 559 Pa. 670, 739 A.2d 168 (1999).

2. The original Section 309 of the Act was amended in 1996, and the difference between the two sections will be discussed later in this opinion. The parties agree that the amended

Wherever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:

\* \* \*

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

\* \* \*

77 P.S. § 582 (emphasis in original). Based on the clear meaning of this section, it appears that Employer's position that Claimant's part-time earnings should be included in the calculation of his average weekly wage is correct. Section 309(d) indicates that a claimant's "highest three of the last four consecutive periods" must be included in the calculation. It does not differentiate between part-time and full-time employment.

It is Claimant's position, however, that by not distinguishing between part-time and full-time employment, Claimant's average weekly wage would not be commensurate with his actual full-time earnings, thus leaving him undercompensated. Claimant also points to the legislative history in support of his position that the General Assembly enacted the amended Section 309(d) in order to prevent workers from earning more from compensation benefits than they would from the job market. It is Claimant's argument that such a windfall would not occur in this case. In addition, Claimant relies on the humanitarian objectives of the Act, and argues that applying Section 309(d) in a literal sense would be repugnant to the purpose of the Act.

Section 309(d) of the Act, 77 P.S. § 582(d), is

Section 309 of the Act was amended by the General Assembly in 1996 by the Act of June 24, 1996, P.L. 350, commonly referred to as Act 57. The 1996 amendment rewrote subsection (d), which directly affects the outcome of this case. The previous section 309(d) of the Act provided, in pertinent part:

(d) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, *or* fourth period of thirteen consecutive calendar weeks . . .

(Emphasis added.) If this section had not been amended in 1996, we would agree with Claimant's position because he would be entitled to include only the highest quarter of employment, if that, in fact, would be most favorable. Instead, we must examine this case in light of the 1996 amendment to the Act and the rules of statutory construction. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c) provides:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

the controlling section of this statute.

(8) Legislative and administrative interpretations of such statute.

Prior to the 1996 amendment, the difference between part-time and full-time employment was not an issue because a claimant was entitled to use his or her highest quarter in the calculation. The circumstances of this case would thus be irrelevant. After the amendment, however, the distinction becomes relevant because three of the last four quarters must be utilized.

■ When the legislature deletes statutory language, we must presume that it intended to make that language inoperative. *Deremer v. Workmen's Compensation Appeal Board (R.J. Glass, Inc.),* 61 Pa.Cmwlth.415, 433 A.2d 926 (1981). In addition, the omission of any language in Section 309 entitling a claimant to preclude part-time earnings from the calculation of the average weekly wage indicates a legislative intent to reject that calculation. Although we are sympathetic towards Claimant's tragic injury, and as much as we would prefer to find otherwise, this Court cannot, as a matter of law, expand the benefits Claimant is entitled to beyond the limits set by the legislature.

In reviewing the legislative history behind the 1996 amendment, it is apparent that the General Assembly wanted to prevent individuals from making more money on compensation then they would in the job market.[3] This eventuality could occur where, under the old Section 309, a claimant could use the highest quarter during the year preceding the injury. Thus, if a claimant had an unusually high quarter due to overtime or other means prior to injury, his or her average weekly wage would be inflated. During the legislative debates in 1996, Senator Gibson E. Armstrong (R. Lancaster; York) took the floor and gave as an example a situation where an employee may be making $10.00 an hour for an extended period of time, and then goes to a prevailing wage job with an increase to $20.00 an hour for a 3 month period, and then is injured. In such a case, instead of the employee's average weekly wage being $400 per week, it would now be $800 per week. In explaining the rationale behind the enactment of the amendment, Senator Armstrong stated the following:

Now, how do you get people back to work when they can make $527 a week by doing nothing, or going back to work and making $400? I do not think that is fair and I think we should try to change that, and under this bill we are going to level that playing field and use three of the last four quarters to determine your average salary instead of just using one high peaked quarter, and many times on that peak they would use bonuses and vacation time and peak it even higher.

*Senate Legislative Journal,* June 10, 1996, p. 2156.

Absent from the legislative history is any thought or discussion regarding a distinction between full-time and part-time workers. Instead, it appears that the General Assembly decided that it would be most fair to treat all workers in a similar fashion by requiring all claimants to include the highest three of their last four quarters in the calculation of their average weekly wage. It is apparent, however, that the new scheme for calculating the average weekly wage is less beneficial than the prior formula in circumstances similar to the case at bar, where an employee is working part-time for his or her employer, and then is hired on a full-time basis during the last quarter before suffering a work injury. Senator Armstrong speaks to such inevitable shortfalls of the legislation by stating:

I admit when you are trying to appease a majority of 253 people, plus a Governor, you cannot write a bill that is per-

---

3. The General Assembly amended other portions of the Act in 1996 not relevant to the present case. The underlying reason for implementing the 1996 amendments was to cur-

tail businesses from leaving Pennsylvania in favor of other states with more favorable workers' compensation laws.

fect. I do not think we have ever written a bill here that is perfect. Some areas of this bill will probably need to be adjusted, and if they do, I am here to tell you I will work with anyone to adjust them as quickly as possible.

*Senate Legislative Journal,* June 10, 1996, p. 2157.

This Court would hope that this appeal would present a situation that would compel just such an adjustment by the General Assembly.[4] As we indicated above, Claimant suffered a tragic accident and we are sympathetic to his plight. Although Claimant would have undoubtedly continued in his full-time employment if his injury had not occurred, this Court is unable to usurp the legislative function by reading into Section 309 of the Act a distinction between part-time and full-time employment that does not exist. We must therefore hold that Claimant is not entitled to omit/exclude from the calculation of his average weekly wage his part-time employment during the year prior to his injury.

Accordingly, we are obliged to reverse the order of the Board and remand the case to the Board for further remand to the WCJ for a recalculation of Claimant's average weekly wage and his weekly benefit rate consistent with this opinion.

### *ORDER*

**NOW,** January 24, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed and this case is remanded to the Board for further remand to the Workers' Compensation Judge for a recalculation of Charles Snyder's average weekly wage and a modification of his benefits in accordance with this opinion.

Jurisdiction relinquished.

---

4. We believe that this case illustrates the inadequacy of the 1996 amendment, resulting in a grossly unfair average weekly wage for certain workers. Under the present law, an individual who works full time for only thirteen weeks prior to an injury would be entitled to a higher average weekly wage calculation than an individual, like Claimant in this case, who worked part time for the first three quarters and full time for the last quarter preceding his injury. In this comparison, the individual who worked only the last quarter would be awarded greater benefits than a claimant who worked for an entire year prior to the injury, although both claimants had received the identical wage for the last quarter before the injury. We submit this disparate treatment, and obvious injustice, for appropriate action by Pennsylvania's General Assembly.