IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elizabeth Westfield,            :
           Petitioner      :
                                :
     v.                  : No. 65 C.D. 2021
                                : ARGUED: November 18, 2021
Nutrition, Inc. (Workers'     :
Compensation Appeal Board),  :
           Respondent   :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED: December 22, 2021

Elizabeth Westfield (Claimant) petitions this Court for review of the December 30, 2020 order of the Workers' Compensation Appeal Board (Board), reversing in part the decision of a workers' compensation judge (WCJ), who awarded Claimant compensation under the Workers' Compensation Act (Act)[1] based on an average weekly wage (AWW) of $600. The Board determined that Claimant's AWW was $249.22, as reflected in the statement of wages submitted by Nutrition, Inc. (Employer), and affirmed the WCJ in all other respects. The sole issue before this Court is whether the Board correctly modified Claimant's AWW. After review, we reverse the Board and remand for further proceedings.

## I. Background

The relevant facts of this matter are largely undisputed. Claimant worked approximately four years in a high school cafeteria as a food service employee.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Certified Record (C.R.), Item No. 20, WCJ Decision, Finding of Fact (F.F.) No. 3. Claimant worked Monday through Friday, earning $9.94 per hour. F.F. No. 5. While Claimant's shift began at 6:00 a.m. each day, the number of hours she worked varied, with her shift generally ending between 3:30 p.m. and 4:00 p.m. F.F. No. 9. Claimant did not work when the high school was out of session, and she collected unemployment benefits during summer breaks. F.F. No. 3. Claimant's wage rate increased to $12 per hour when she received a temporary promotion to fill the position of kitchen manager while the employee who ordinarily worked that job was on medical leave. F.F. No. 4. Employer expected that the kitchen manager would return after her medical leave ended and Claimant would return to her original duties. *Id.* Claimant worked as kitchen manager for approximately three months before she sustained a work injury on March 15, 2017, when she slipped and fell while entering the high school building at the start of her shift. F.F. Nos. 3, 5. Employer issued a notice of compensation payable on June 9, 2017, acknowledging Claimant's work injury, which Employer described as a contusion to Claimant's upper back area and right knee. F.F. No. 2. Claimant underwent back surgery on May 12, 2017, which failed to provide her with pain relief. *Id.* Claimant tried other treatments, such as physical therapy and acupuncture, which also failed to alleviate Claimant's pain symptoms. *Id.*

On March 21, 2018, Employer filed a petition to suspend Claimant's benefits on the basis that Employer offered a job within Claimant's medical restrictions. C.R., Item No. 2. Claimant denied the allegations and filed a review petition, alleging that Employer incorrectly calculated her wages. *Id.*, Item Nos. 4, 9. Claimant filed a second review petition seeking to expand the description of her injury. *Id.*, Item No. 12. Both Claimant and Employer filed petitions for utilization

2

review (UR), seeking a determination regarding the necessity of Claimant's medical treatment. *Id.*, Item Nos. 5, 7.

Claimant testified at depositions held on September 10, 2018, and April 18, 2019, and Employer presented the deposition testimony of Cindy Thomas, Employer's assistant human relations director, and Melissa Lichtner, Claimant's supervisor.[2]

Claimant advised that she underwent a second surgery on January 15, 2019, which alleviated some of her pain symptoms. C.R., Item No. 30, Claimant dep., 4/18/19, at 17, 23. Claimant currently attends physical therapy twice a week, takes Percocet and a muscle relaxer for pain, and walks with the assistance of a cane. *Id.* at 24, 27, 40. Claimant's treatment providers have not yet released her to return to work, and she does not believe she could return to her regular job or work a modified-duty job on a full-time basis. *Id.* at 25.

During her December 3, 2018 deposition testimony, Thomas acknowledged that Claimant worked in the position of kitchen manager on the date she sustained the work injury, and she was paid $12 per hour, an amount not reflected in Employer's payroll records. C.R., Item No. 36, Thomas dep., 12/3/18, at 23. Thomas suggested that Employer's payroll records did not recognize Claimant's $12 hourly wage because she only received that pay on a temporary basis. *Id.* at 38. Thomas agreed that the employee who previously filled the kitchen manager position had not returned to work. *Id.* at 27.

---

[2] Claimant also presented the deposition testimony of her treating physician, Dr. Gene Salkind, M.D. Employer presented the testimony of Dr. Neil Kahanovitz, who performed an independent medical examination of Claimant on February 8, 2018. It is not necessary to summarize their respective testimony, as it does not implicate our resolution of the instant appeal.

Lichtner, Employer's food service director, testified that Employer offered Claimant a sedentary position following her May 12, 2017 surgery, but that Claimant only worked two hours before leaving due to pain. C.R., Item No. 37, Lichtner dep., 12/3/18, at 6, 8, 11. Employer paid Claimant $9.94 per hour for her time. Thomas dep., Ex. 4. Employer offered Claimant a second sedentary position based on the restrictions outlined by Employer's medical expert. Lichtner dep. at 13. Claimant declined the offer, however, as her treating physician had not released her to work. *Id.* at 14. Lichtner confirmed that Claimant worked the kitchen manager position for approximately three months prior to the March 17, 2017 work injury. *Id.* at 15, 18. Had Claimant not been injured, Lichtner conceded that she might have promoted Claimant to the kitchen manager position on a permanent basis, given that the original employee never returned. *Id.* at 19. Because Claimant was "really good at what she did" in the food service position she previously occupied, however, Lichtner "probably just would have put [Claimant] back" to that position. *Id.* at 19, 25. Lichtner stated that while the previous kitchen manager never returned to work, the position had been filled by a permanent employee. *Id.* at 16.

At a March 27, 2019 hearing before the WCJ, Claimant's counsel noted that a dispute existed regarding Employer's calculation of Claimant's AWW and the accuracy of its statement of wages. C.R., Item No. 27, at 13. Claimant's counsel did not raise a concern with the "underlying data," merely the method by which Employer calculated Claimant's AWW. *Id.* at 14-15. In an April 30, 2019 letter to the WCJ, Claimant formally objected to admission of Employer's statement of wages as "incorrect evidence." C.R., Item No. 29.

The WCJ circulated her decision on December 17, 2019, crediting the testimony of Lichtner and Thomas that Claimant earned $12 per hour at the time she

4

was injured.  F.F. No. 17.  Although Lichtner, Thomas, and Claimant understood that Claimant's position as kitchen manager was temporary, the WCJ found that there was no established deadline as to when that position would no longer be available.  *Id.*  Rather, Claimant would fill that position until the original kitchen manager returned from medical leave.  *Id.*  As of December 3, 2018, the date Lichtner and Thomas testified, that still had not occurred.  *Id.*  The WCJ overruled Claimant's objection to the admission of Employer's statement of wages but found that it did not reflect Claimant's $12 hourly wage and, therefore, did not accurately represent Claimant's AWW.  *Id.*  Accordingly, the WCJ granted Claimant's review petition challenging Employer's calculation of her AWW and directed Employer to pay Claimant weekly compensation in the amount of $495.50, based on an AWW of $600 per week from March 15, 2017, and ongoing, and to pay Claimant's necessary and related medical expenses.[3]  WCJ Decision at 18.

Employer appealed to the Board, challenging the WCJ's calculation of Claimant's AWW.  Employer argued that the WCJ should have based Claimant's AWW on her earnings in the three highest of the four quarters preceding the work injury, as directed by Section 309(d) of the Act, 77 P.S. § 582.  Employer also argued that the record did not support the WCJ's finding that Claimant earned $12 per hour or that her AWW should be $600, as Claimant never worked more than 74.75 hours during any two-week period.

The Board agreed with Employer as to the WCJ's calculation of Claimant's AWW.  C.R., Item No. 23, Board Decision at 8.  First, the Board noted that the record did not support the WCJ's determination that Claimant worked an average of

---

[3] The WCJ also granted Employer's UR petition and denied Claimant's UR petition, after finding that some of Claimant's treatment was not reasonable or necessary.  F.F. No. 20, WCJ Decision at 18.

50 hours per week. Furthermore, while Claimant might have continued to make $12 per hour after the date of her work injury, a claimant's AWW is based on wages earned in the year preceding the work injury, not future wages. The Board reasoned that Claimant's receipt of a $12 hourly wage was a temporary state, and not an accurate expression of Claimant's economic reality. C.R., Item No. 23, Board Decision at 7. Therefore, the Board reversed the WCJ and directed that Claimant's AWW should be $249.22, as reflected in Employer's statement of wages. The Board affirmed the WCJ in all other respects.

Two members of the Board dissented. Citing *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 834 A.2d 524 (Pa. 2003), one Board member opined that Claimant demonstrated an earning capacity of $12 per hour. Although he questioned the average number of hours the WCJ estimated Claimant worked, he would have affirmed the WCJ. This appeal followed.[4]

## II. Discussion

Under Section 309(d) of the Act, a claimant's AWW shall be calculated by averaging her total wages for "each of the highest three of the last four consecutive" 13-week periods in the year immediately preceding her injury. Where a claimant has not been employed for at least three consecutive 13-week periods prior to sustaining the work injury, Section 309(d.1) of the Act provides that her AWW is calculated by averaging the total amount earned in any completed 13-week period. 77 P.S. § 582(d.1). The AWW of a claimant who experiences periodic layoffs but who maintains a continuous employment relationship is governed by Section 309(d).

---

[4] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Pittsburgh Steelers Sports Inc. v. Workers' Comp. Appeal Bd. (Trucks)*, 234 A.3d 442, 444 n.7 (Pa. Cmwlth. 2020).

*See Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 548 (Pa. 2005).

In *Hannaberry*, the precedent cited by one of the dissenting Board members, our Supreme Court reviewed whether a claimant's AWW should be based on the wages he received at the time of his injury or if it should also include the part-time wages he received prior to commencing full-time employment. The claimant in *Hannaberry* worked for his employer on a part-time basis until he graduated from high school, after which he began working full-time hours. Approximately three months later, the claimant suffered a work injury after a forklift fell on him, rendering him a quadriplegic. His employer recognized the claimant's work injury but based his AWW on his part- and full-time wages. The claimant argued his benefit amount should be solely based on his full-time wages at the time he sustained the work injury. A WCJ agreed and calculated the AWW based on the claimant's last quarter of earnings, which totaled more than four times his wages from the next highest quarter. The employer appealed to the Board, which affirmed. This Court reversed the Board, noting that Section 309 of the Act, which governed the calculation of a claimant's AWW, did not distinguish between part-time and full-time employment. Although it recognized that including the claimant's part-time wages in the calculation of his AWW led to a "grossly unfair" AWW, this Court felt the language of Section 309 commanded such a result. *Hannaberry*, 834 A.2d at 527.

In reviewing this Court's decision, the Supreme Court analyzed the legislative intent behind Section 309, which had been recently amended by the General Assembly. In that regard, the Supreme Court concluded that the overall aim and purpose of Section 309 was to ensure greater accuracy in the computation of an

7

injured employee's AWW, while also avoiding an award of compensation that exceeded the wages he would have received had he remained in the workforce. The various calculation methods set forth in Section 309 were therefore intended to generate an AWW representing an "accurate and realistic measure of what the employee could have expected to earn had he not been injured[,]" which ensured he was neither over- nor under-compensated. *Id.* at 528. The Supreme Court declined to assume that the General Assembly intended to have the wages of workers shifting from part-time to full-time employment underestimated, as such a result would be contrary to the humanitarian purpose of the Act. As to the claimant, his wages at the time of injury were not artificially inflated, representing a one-time peak or spike in pay, but the wages he "regularly earned at the time of injury." *Id.* To that end, the Supreme Court reinstated the WCJ's order, holding that Section 309(d) did not control the AWW calculation "in a circumstance where it would lead to a grossly and demonstrably inaccurate measure of a worker's [AWW.]" *Id.* at 534. The net effect of *Hannaberry* was to equitably apply Section 309(d.1) of the Act to the claimant's circumstances, under which his AWW was based on the total wages earned for "any completed period of [13] calendar weeks immediately preceding the injury." 77 P.S. § 582(d.1).

Claimant relies primarily on the Supreme Court's decision in *Hannaberry* in arguing that the Board erred in reversing the WCJ's calculation of her AWW. Because the previous kitchen manager had still not returned to work by December 3, 2018, the date Lichtner and Thomas testified by deposition, Claimant argues that an AWW based on her $12 hourly wage would more accurately reflect her economic reality. Moreover, Claimant argued that Employer never established when the kitchen manager position would no longer be available, which Claimant suggests

8

indicates that Claimant's promotion may not have been truly temporary. Claimant submits that her position is bolstered by Lichtner's testimony that she would have considered hiring Claimant to fill the kitchen manager position on a permanent basis.

Employer argues that Claimant's situation does not present any unique circumstances that would trigger the application of *Hannaberry.* Claimant's position had not permanently changed from food service employee to kitchen manager, and the fact that Claimant might have continued to work in that position is not sufficient to support a conclusion that Claimant's promotion was anything but temporary. Employer maintains that applying *Hannaberry* in these circumstances would result in an artificially heightened AWW. As Claimant worked for Employer for four years prior to sustaining her work injury, her AWW must be calculated under Section 309(d) of the Act, which considers the three highest of four quarters immediately preceding the work injury. Even if *Hannaberry* applies, Employer argues that the record does not support a finding that Claimant worked an average of 10 hours per day, for an AWW of $600.

We agree with Employer that *Hannaberry* differs factually from the instant matter because the claimant in *Hannaberry* was engaged in his regular full-time position at the time he was injured. Ultimately, Claimant was aware that her position as kitchen manager was temporary. She may have held that position, with its increased hourly wage, for another week or month or year. While Claimant's increased hourly wage cannot be dismissed as a one-time peak in pay, and the exact date she would return to her former position as a food service employee was never defined, Claimant had no reasonable expectation that her increased hourly wage would continue indefinitely. Any suggestion that Claimant would have been hired to fill the kitchen manager position on a permanent basis is purely speculative,

particularly in light of Lichtner's testimony that, had Claimant returned to work, she would most likely have returned Claimant to her previous position as a food service employee, rather than permanently promote her. Basing Claimant's AWW on the hourly wage and position to which she could have returned at any time is not the "grossly unfair" outcome the *Hannaberry* Court sought to prevent. Indeed, our adoption of Claimant's position would extend the holding in *Hannaberry* to include circumstances in which a claimant has benefited from a temporary increase in pay, effectively rendering that temporary increase permanent for the duration of a claimant's period of disability. Such an outcome would thwart the overall aim and purpose of Section 309 as identified by the Supreme Court in *Hannaberry* – accurately computing an injured employee's AWW while also avoiding an award of compensation that exceeds the wages she would have received had she remained in the workforce.

Claimant indisputably worked for Employer for four years, which places the calculation of her AWW within Section 309(d) of the Act. By its terms, Section 309(d) considers the three highest of four 13-week earning periods immediately *preceding* the work injury. The WCJ erred in basing Claimant's AWW on the $12 hourly rate she received in her temporary position as kitchen manager. The Board corrected this error when it reversed her decision.

Although we have concluded that the Board did not err when it reversed the WCJ's calculation of Claimant's AWW, there remains a question as to the accuracy of Employer's statement of wages. Our review of the record reveals inconsistencies between Claimant's earnings, as documented in Employer's payroll records, and the

statement of wages Employer produced.[5] As a result, we reverse the Board's order to the extent it accepts Employer's calculation of Claimant's AWW and remand this matter to the Board for further remand to the WCJ, who shall recalculate Claimant's AWW.

_____
ELLEN CEISLER, Judge

---

[5] Employer appears to have correctly totaled Claimant's wages for only one of the four 13-week periods immediately preceding the work injury. C.R., Item No. 36, Item No. 41, Ex. 4. The second 13-week period, which began on June 15, 2016, and ended on September 14, 2016, includes earnings for the pay period ending on September 23, 2016. *Id.* These earnings should have been included in the following 13-week period of September 14, 2016, through December 13, 2016. The total wages reported by Employer for the third and fourth periods appear to omit a substantial portion of Claimant's earnings – more than $1,500 for the third period and approximately $700 for the fourth period.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elizabeth Westfield,         :
         Petitioner     :
                 :
    v.            :  No. 65 C.D. 2021
                 :
Nutrition, Inc. (Workers'    :
Compensation Appeal Board),  :
        Respondent   :

# **O R D E R**

AND NOW, this 22nd day of December, 2021, the December 30, 2020 order of the Workers' Compensation Appeal Board is hereby REVERSED, and this matter is REMANDED to the Board for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

_____
ELLEN CEISLER, Judge