842 A.2d 327

## In re NOMINATION PAPERS OF Joe LAHR,

### Petition of Joe Lahr.

Supreme Court of Pennsylvania.

Order Oct. 29, 2003.

Submitted Oct. 29, 2003.

Opinion in Support of Order Feb. 17, 2004.

2

Mark S. Stewart, Karen M. Balaban, for Joe Lahr.

Carolyn C. Thompson, for Court Administrator, Dauphin County.

Monna Accurti, for Bureau of Elections.

Richard B. Wickersham, for Lavon A. Postelle and Paula A. Brown-Postelle.

## ORDER

PER CURIAM.

**AND NOW,** this 29th day of October 2003, the Petition for Allowance of Appeal is **GRANTED** and the Order of the Commonwealth Court is **REVERSED.** Opinion to Follow.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, JJ.

## OPINION

Justice CASTILLE.

This Opinion is filed in support of this Court's unanimous per curiam order of October 29, 2003, which granted Lahr's Petition for Allowance of Appeal and reversed the Commonwealth Court's order in this election matter. See *In re: Nomination Papers of Joe Lahr*, 577 Pa. 1, 842 A.2d 327 (2003). The practical effect of our order was to permit petitioner Lahr to remain on the November 4, 2003 general election ballot as a third-party candidate for the office of District Justice in newly-formed Magisterial District No. 12–2–05 in Dauphin County.[1]

Two weeks before the general election, petitioner sought expedited review of the Commonwealth Court's order which had reversed a trial court order denying the petition of respondents Lavon and Paula Postelle to set aside petitioner's nomination papers. In granting review and summarily reversing, this Court determined that the Commonwealth Court had erred in holding that petitioner had failed to change his party registration in a timely fashion under the Election Code, 25 P.S. § 2911.1, so as to render him eligible to seek the office of District Justice as a third-party candidate in the general election. We noted in the per curiam order that an opinion would follow.

Lavon Postelle won the Democratic nomination for the district justice seat in the May 20, 2003 primary election, while no candidate in the Republican primary qualified to appear on the general election ballot. Petitioner was a registered Republican who had cross-filed nomination petitions for both the Democratic and Republican primary elections for the new seat. Although the record is sparse, it appears that petitioner's primary candidacies were successfully challenged and he ultimately did not appear on either party's primary ballot. On Monday, April 21, 2003, twenty-nine calendar days before the

---

1. Petitioner ultimately lost the general election to respondent Lavon Postelle. However, since this situation is capable of repetition and involves important rights in the electoral arena, this Court chooses to address the matter.

primary election, petitioner filed a Registration Declaration with the Dauphin County Voter Registration Office changing his party registration to "No Affiliation."

Thereafter, on July 22, 2003, a political body[2] calling itself "Joe Lahr Justice" filed nomination papers nominating petitioner as its candidate in the November 4, 2003 general election for District Justice. Through all times relevant here, petitioner maintained his registration as "No Affiliation."

On August 4, 2003, respondents petitioned to set aside the nomination papers alleging, inter alia, that petitioner had failed to timely change his party registration in accordance with Section 2911.1 of the Election Code. Section 2911.1 provides:

> Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year nor shall any person who is a registered and enrolled member of a party be eligible to be the candidate of a political body for a special election.

25 P.S. § 2911.1. Respondents argued that, because petitioner's change in registration (or "disaffiliation" with a political party) occurred only twenty-nine days before the May 20th primary, he was ineligible to be the candidate of a political body in the general election.

Following a hearing on October 3, 2003, the Honorable Joseph H. Kleinfelter denied respondents' petition. In finding petitioner's change of registration to be timely, President Judge Kleinfelter applied Section 2603(e) of the Election Code, which provides that:

> In determining or reckoning any period of time mentioned in this act, the day upon which the act is done, paper filed, or notice given, shall be excluded from, and the date of the

---

**2.** Under the Election Code, a political body is an independent body of electors that has not acquired status as a political party. 25 P.S. § 2602(p); id. § 2831. A political body may secure a place for its nominees on the official ballot by filing nomination papers. Id. § 2911.

primary, election, hearing or other subsequent event, as the case may be, shall be included in the calculation or reckoning:  Provided, however, That if the last day upon which any act may be done, paper filed, or notice given, shall fall on a Sunday or a legal holiday, the next following ordinary business day shall be considered as the last day for said purpose.

25 P.S. § 2603(e).  The trial court reasoned that: "as the 30th day before the primary fell on a Sunday [i.e., April 20, 2003], [petitioner's] dis-enrollment as a member of a political party on Monday, April 21, was timely" since April 21 was the next following ordinary business day from the last day upon which the change in registration could be effected.  Slip op. at 3.  In further support of its conclusion, the trial court also noted that the Pennsylvania Department of State's "2003 Election Calendar" had designated April 21 of the calendar year as the last day to change party enrollment before the primary.

Respondents appealed to the Commonwealth Court, which reversed in a single-judge memorandum opinion by the Honorable Rochelle S. Friedman.  Judge Friedman determined that the trial court had erred in relying upon Section 2603(e) and its "next following ordinary business day" proviso because the statute earlier referred to the "date of the primary . . . or other subsequent event."  25 P.S. § 2603(e).  In Judge Friedman's view, the reference to a subsequent event indicated that the Section "only applies in those cases where it is necessary to count forward in time, *not* where it is necessary to count backward in time."  Slip op. at 4 (emphasis original).  The court instead deemed the time computation provision of the Statutory Construction Act, 1 Pa.C.S. § 1908, to be controlling.  Section 1908 provides, in pertinent part, that:

When any period of time is referred to in any statute, such period in all cases . . . shall be so computed as to exclude the first and include the last day of such period.  Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

*Id.* Looking backwards from the date of the primary election, and applying Section 1908 literally, the court concluded that petitioner had failed to timely change his party registration:

> [C]ounting backwards thirty days from the primary election, the thirtieth day falls on a Sunday. Omitting Sunday from the computation, the thirtieth day would fall on a Saturday. Omitting Saturday from the computation, the thirtieth day would fall on a Friday. Thus, to be eligible to run as a candidate of a political body in the general election, a person must disaffiliate himself or herself from a political party by the Friday prior to the Sunday which is the thirtieth day before the primary election.

Slip op. at 5 (footnote omitted). The court further concluded that petitioner was ineligible to run in the general election under Section 2603(e) because, when counting backwards is involved, "the next following ordinary business day prior to the Sunday which is the thirtieth day before the primary election also would be Friday." *Id.* at 5 n. 4. Thus, under the court's reasoning, despite the thirty-day period referred to in Section 2911.1 of the Code, a voter only has until thirty-two days before the primary election to disaffiliate himself from a political party in order to ensure eligibility as a candidate of a political body in the general election.

The issue for review then is whether, under Section 2911.1, a person who changes his party registration twenty-nine days before the primary election is ineligible to be the candidate of a political body in the general election where—as will always be the case so long as primaries are held on Tuesdays—the thirtieth day before the primary falls on a Sunday. This statutory construction question is one of first impression. As the question is one of law, our review is plenary. *Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

The polestar of statutory construction, of course, is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a) (court's sole objective in construing or interpreting a

statute remains to "ascertain and effectuate the intention of the General Assembly"); *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.),* 834 A.2d 524, 531 (Pa.2003). "Generally speaking, the best indication of legislative intent is the plain language of a statute." *Gilmour Manufacturing, supra.* Furthermore, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." *Id.,* (quoting 1 Pa.C.S. § 1903). The Statutory Construction Act also requires, among other things, that courts "presume that the General Assembly did not intend a result that is absurd or unreasonable." 1 Pa.C.S. § 1922(1) (fundamental presumption in "ascertaining the intention of the General Assembly in the enactment of a statute" is that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"); *Hannaberry, supra.*

Petitioner begins by invoking the settled principle that the Election Code is to be construed liberally so as not to deprive an individual of his right to run for office, or the voters their right to elect a candidate of their choice. See *Nomination Petition of Flaherty,* 564 Pa. 671, 770 A.2d 327, 331 (2001); *Petition of Ross,* 411 Pa. 45, 190 A.2d 719, 720 (1963) (collecting cases). Petitioner argues that the Commonwealth Court lost sight of that precept when it adopted the strictest possible construction of the Code, one that affords a putative candidate two days **less** time to change his party registration than is contemplated by the plain language of Section 2911.1. Petitioner further argues that the clear purpose of **both** Section 2603(e) of the Code and Section 1908 of the Statutory Construction Act is to **expand** the time to meet statutory deadlines to the next business day where, as here, the voter cannot take advantage of the specifically allotted time because the last day falls on a non-business day. Moreover, petitioner argues that since Section 2603(e) expressly applies to "any period of time," the Commonwealth Court erred in construing the Section as limited to instances where it is necessary to count forward in time. Petitioner argues that, under Section

2603(e), a person seeking to change his party affiliation in the 2003 election cycle had until Monday, April 21, the twenty-ninth day before the primary, because the thirtieth day before the primary was a Sunday, a day on which the change could not be accommodated. Additionally, petitioner argues that the court should have afforded some deference to the Department of State Bureau of Elections, which had interpreted the Code to allow voters to register or change affiliation up until April 21, 2003, and had published this date as the deadline in the official State Election Calendar. Finally, petitioner avers that the court erred in retroactively applying what amounts to a "new rule" in order to preclude him from running for office.[3]

Preliminarily, we turn to the question of the interplay of the relevant time computation provisions in the Election Code and the Statutory Construction Act, a question this Court addressed in *Petition of Kehler*, 434 Pa. 274, 256 A.2d 623 (1969). *Petition of Kehler* involved challenges to the validity of absentee ballots, the salient issue on appeal being the timeliness of an appeal from a county Election Board order. The Board order was filed on a Thursday and, under the Election Code, the aggrieved party had two days to appeal the decision. *See* 25 P.S. 3157(a). The appeal was not taken until the succeeding Monday.

In *Petition of Kehler*, the difference between the computation provisions created a conflict and, ultimately, was outcome-determinative. This was so because the Statutory Construction Act specifically excludes Saturdays from time computations, *see* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday [or a legal holiday] ... such day shall be omitted from the computation"),[4] while the Election Code does not. *See* 25 P.S. § 2603 (addressing only Sundays and legal holidays). If the Code

---

3. Respondents elected not to file a brief in opposition to the petition for allowance of appeal, instead noting their reliance upon the Commonwealth Court memorandum opinion. Accordingly, we lack an advocate's response to the various points made by petitioner.

4. At the time *Petition of Kehler* was decided, present-Section 1908 of the Act was found at 46 P.S. § 538. The substance of the provision has remained unchanged.

controlled, the appeal would be facially untimely; if the Act controlled, the appeal would be proper. A divided Court (4–2) held that, where such an irreconcilable conflict between the provisions existed, the Statutory Construction Act, having been enacted later in time, supplanted the Election Code:

> The meaning of [now-Section 1908] is clear. It refers to "any law" and "all cases." This section supersedes the computation method on all previously effective laws. No express repealer of the method of computation used in the Election Code is required because ... the Statutory Construction Act ... provides that the law with the latest date of enactment is to prevail if an irreconcilable conflict exists between laws passed at different legislative sessions.

256 A.2d at 624.

With respect to the question presented sub judice, there is no equivalent "irreconcilable conflict" between the Code and the Act and, thus, we do not believe that the trial court erred in looking to Section 2603(e) of the Act upon that ground. Nor, contrary to the finding of the Commonwealth Court, do we believe that the trial court erred in looking to Section 2603(e) because that Section supposedly is intended to apply only to "forward-looking" computations and not to "backward-looking" ones. The fact that most statutory time computations are forward-looking no doubt played some role in the language employed in Section 2603(e). But, as petitioner accurately notes, this Section—which is found in the "Preliminary Provisions" of the Code and governs "Construction" of the Code as an entirety, and thus necessarily speaks in generalities—draws no such distinction. Instead, the statute speaks of "determining or reckoning **any period of time** mentioned in this act" (emphasis added).

We believe that the Code fully supports the trial court's conclusion that petitioner's change of registration, which was effected the very next business day after the Sunday representing the deadline upon which a change of registration could be effected, was timely. The change of registration restriction in Section 2603 addresses the options of persons who would run for office as candidates of a political body—i.e., it speaks

to ordinary citizens. The thirtieth day before a Tuesday will always be the fifth preceding Sunday and, under the Election Code, primary elections are always held on Tuesday. See 25 P.S. § 2753 ("There shall be a General Primary preceding each general election which shall be held on the third Tuesday of May in all even-numbered years, except in the year of the nomination of a President of the United States, in which year the General Primary shall be held on the fourth Tuesday of April."). Under the statutory proviso, where the last day upon which an act may be done is a Sunday, the "next following ordinary business day"—Monday in a world moving forward in time—effectively becomes the last day. A person looking to the plain language of the change of registration restriction and reading it in a common sense fashion would understand the statute to be speaking in terms of a linear progression in time—i.e., as expanding, and not contracting, the allotted period during which he may "disaffiliate" himself from a political party. The citizen should not be obliged to read the statute in a tortured fashion, as if he were the brilliant but often-confused wizard Merlyn in *The Once and Future King*,[5] i.e., living backwards in time, so that the "next" day to accomplish the act becomes a day that already has passed.

Moreover, to read the provision as operating to **restrict** a citizen's right to disaffiliate himself with a party and become eligible to run as a political body's candidate would render the Code's thirty-day promise illusory. The Code essentially provides that a person has up until thirty days before the primary to decide to disaffiliate himself from his political party and create the option of a third-party candidacy in the general election. The Commonwealth Court's reading, however, requires that the decision be made two days sooner than the statute plainly provides. If the General Assembly truly intended its thirty-day restriction upon the right of would-be political body candidates to change their registration to be a thirty-two day restriction, it could have said so explicitly. It did not do so. Bearing in mind that the Election Code is to be

5. T.H. White, *The Once and Future King*.

read liberally in favor of the right to run for office and for voters to select a candidate of their choice, *Nomination Petition of Flaherty, supra,* as well as the proscription in the Statutory Construction Act against absurd or unreasonable results, 1 Pa.C.S. § 1922(1), we conclude that petitioner's change of registration here was effected in a timely fashion.

Analyzing the question under the computation provision in the Statutory Construction Act leads to the same conclusion.[6] Section 1908 requires omitting the "last day" of any time restriction if it falls on Saturday, Sunday or a legal holiday. Again approaching the legislation in a common sense fashion with an eye to the forward progression in time—and mindful of the requirements of liberal construction of the Code, and the duty to avoid unreasonable or absurd constructions— because a person contemplating a change in registration cannot accomplish it on the last day provided, that last day is omitted and the party should have until the next day which is not a Saturday, Sunday or legal holiday in which to change his registration.[7]

**6.** The courts have generally employed Section 1908 in circumstances that require counting forward. *See e.g., Commonwealth v. Revtai,* 516 Pa. 53, 532 A.2d 1 (1987)(when last day of five-day period prescribed in rule of criminal procedure falls on weekend or legal holiday, filing on next day is timely); *Commonwealth v. Jones,* 473 Pa. 211, 373 A.2d 1338 (1977)(defendant not denied right to speedy trial under criminal rules where last day for trial under rule fell on Saturday and trial occurred on following Monday); *County of Bucks v. Cogan,* 150 Pa. Cmwlth. 74, 615 A.2d 810 (1992)(tax collector timely filed appeal from judgment where thirtieth day fell on Saturday, extending filing period to Monday); *Spillane v. Workmen's Compensation Appeal Board,* 26 Pa.Cmwlth. 536, 364 A.2d 1386 (1976)(where last day of sixteen-month period of limitation for filing workmen's compensation claim was Sunday, claim petition filed on following Monday was timely). *But see Williams v. Wade,* 704 A.2d 132 (Pa.Super.1997)(counting backward to construe rule of civil procedure requiring notice ten days prior to date of filing praecipe); *Cheltenham Township Police Assoc. v. Cheltenham Township,* 152 Pa.Cmwlth. 338, 618 A.2d 1234 (1992)(counting backward to construe statutory provision, which requires that collective bargaining begin at least six months before start of political subdivision's fiscal year).

**7.** It is notable that, in the only instance where this Court has applied the Statutory Construction Act to construe an Election Code deadline, it construed the deadline liberally to provide more, not less, time for compliance. *Petition of Kehler, supra.* And, in other contexts, the Act's

■ Accordingly, we hold that a person who changes his party registration on the next business day following the thirtieth day before the primary election satisfies the deadline provided under Section 2911.1 of the Election Code. Because petitioner timely changed his party registration, the Commonwealth Court erred in reversing the trial court's order refusing to set aside the nomination papers. Thus it is that we entered our per curiam order of reversal.

Justice BAER did not participate in the consideration or decision of this case.

effect has likewise been to extend the relevant statutory deadline where it falls on a weekend or a legal holiday. *See supra* n. 6. We find further support for our conclusion in the fact that the Pennsylvania Department of State apparently interpreted Section 2911.1 of the Code as we have, since the Department's "2003 Election Calendar" set Monday, April 21 as the deadline to change party registration. *See Gilmour Manufacturing, supra*, 822 A.2d at 679 (administrative agency's interpretations of statute are entitled to deference unless interpretation is unwise or violative of legislative intent)(citations omitted).