**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| GREEN PARTY OF PENNSYLVANIA AND CHERI HONKALA, | : | No. 11 MAP 2017 |
| | : | |
| | : | Appeal from the Commonwealth Court |
| Appellants | : | Order dated February 15, 2017 at No. |
| | : | 43 MD 2017. |
| | : | |
| v. | : | SUBMITTED:  February 23, 2017 |
| | : | |
| | : | |
| DEPARTMENT OF STATE BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION AND COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellees | : | |

**OPINION**

| | |
|---|---|
| | **OPINION FILED: August 22, 2017** |
| **JUSTICE MUNDY** | **DECIDED: March 3, 2017** |

Due to the impending special election on March 21, 2017, we resolved the instant matter by per curiam Order on March 3, 2017.  *See Green Party of Pa. v. Dep't of State Bureau of Comm'ns*, 161 A.3d 172 (Pa. 2017) (affirming the Commonwealth Court's denial of mandamus relief).  The Order left in place the Bureau's determination that Honkala was ineligible to appear on the ballot as a candidate in the special election. We now set forth the reasons for our decision.

On January 13, 2017, the Speaker of the Pennsylvania House of Representatives, Mike Turzai, issued a writ of election to be held on March 21, 2017 for the 197th Legislative District.  The special election was necessary due to the resignation of former Representative Leslie Acosta.  Pursuant to the "Calendar for Special Election

to be Held March 21, 2017," prepared by the Department of State, Bureau of Commissions, Elections and Legislation (hereinafter the "Department" or the "Bureau"), the last day to file nomination certificates and nomination papers was January 30, 2017, based on Section 629 of the Election Code.

Section 629 provides, in relevant part:

Candidates to fill vacancies in the office[] of . . . Representative in the General Assembly . . . shall be nominated by political parties, in accordance with the party rules relating to the filling of vacancies, by means of nomination certificates . . ..  Said nomination certificates … for the office of . . . Representative in the General Assembly shall be filed in the office of the Secretary of the Commonwealth not later than fifty (50) days prior to the date of the special election.

25 P.S. § 2779.

The Green Party is a minor political party as defined by Section 912.2 of the Election Code, 25 P.S. § 2872.2.  It only recently regained minor political party status after ten years as a political body.  *See* Section 801 of the Election Code, 25 P.S. § 2831(c).  On January 29, 2017, the Green Party held a convention and nominated Honkala as its candidate for the special election.  On January 31, 2017, a representative of the party attempted to file the nomination certificate and other related documents with the Department.  The nomination certificate was rejected as untimely.

The Green Party and Honkala filed a petition for writ of mandamus in the Commonwealth Court on February 2, 2017, and a hearing was held on February 9, 2017 before Senior Judge J. Wesley Oler, Jr.  Evidence presented at the hearing established that on January 17, 2017, Adam Yake, an administrative assistant with the Bureau spoke with Pennsylvania Green Party Chair, Kristin Combs, to confirm the e-mail address and mailing address of the party.  N.T. Hearing, 2/9/17, at 64.  During the conversation he informed her that he was going to send her information regarding the

special election. On January 17, 2017, at 2:55 p.m., Yake sent an e-mail to contact@gpofpa.org with the subject line "Special Election State Representative 197th District." The message stated, "Please find attached information relating to the upcoming Special Election." Hearing, 2/9/17, Appellees' Exhibit A. Among the attachments was a letter dated January 17, 2017 that Commissioner of the Bureau Jonathan Marks sent to Combs at the Pennsylvania Green Party's post office box in Philadelphia. The letter stated, *inter alia*, "[Y]ou will have until January 30, 2017 to file with us the certificate nominating the Green Party's candidate." *Id.* The letter concluded with the following statement: "If you have any questions, please feel free to contact Jessica Mathis, of my staff, at (717) 772-4507." *Id.*

Hillary Kane, the former secretary of the Pennsylvania Green Party testified that she was responsible for filing the nomination certificate and related documents for the special election. N.T. Hearing, 2/9/17 at 5-6. When she checked the post office box on January 25, 2017, the letter from the Department was not there. She did not actually see the letter until January 31, 2017. *Id.* at 14-15. She testified that she is not in the habit of looking at the e-mails sent to the Party. Rather, it is usually Combs who does this. *Id.* at 35-36. She further testified that she did not dispute that the information was sent to the Party by e-mail and to its post office box. *Id.* She also testified that she did not consult the Department of State's website for the calendar of dates related to the special election. *Id.*

Kane also testified that in her role as Honkala's campaign treasurer, she had prior dealings with a woman named Sandy in the campaign finance division of the Department who called to advise her that she would have to refile some campaign finance paperwork by January 30, 2017. *Id.* at 22. On January 30, 2017, Kane called Sandy to inquire whether the newly filed paperwork was in order. Sandy told her that

everything "look[ed] good." *Id.* at 23. Kane testified that she and Sandy spoke about other campaign finance matters. She then testified:

> And then the very last thing I said was, Is there anything else that we need to turn in to show that she is the party's nominee, like anything that documents that this is our candidate, because I knew that all the paperwork we had turned in prior to that was really about her campaign and not the party. But I didn't know -- I didn't know of the nomination certificate. Like, I had not yet opened that mail and didn't see it. So I asked her, Is there anything else we need to do to ensure that she's our candidate? And she said, No, you're fine; like everything is good. So I took that as -- as accurate, you know.

*Id.* at 23-24.

On cross-examination, Kane testified to a conversation that she had with Sandy on January 31, 2017:

> And so I called Sandy, and I said, Sandy, what's going on? You know, didn't we have a conversation yesterday? And that -- you know, she said, Oh well, I meant from a campaign finance perspective that you don't owe anything more. But that was not clear to me on the phone on the -- when I talked to her on the 30th. I mean, I have no -- you know, just because she's in some department doesn't mean that she doesn't know what the rest of the law is or the rest of the process.
> You know, so I think -- you know, I think it's literally talking -- two people talking past each other. You know, I don't necessarily blame her.

*Id.* at 37-38.

Kane also testified that although she had Honkala's statement of financial interest with her when she went to Harrisburg on January 31, 2017, she did not file the statement with the Board of Ethics because the nomination certificate had been rejected. *Id.* at 35, 41-42.

Jessica Mathis, Chief of the Division of Elections and Voter Registration testified that the woman named Sandy who Kane referred to is in the campaign finance division and has nothing to do with the acceptance of nomination certificates. *Id.* at 55.

On February 15, 2017, the Commonwealth Court issued a memorandum opinion and order denying the petition for a writ of mandamus. The court concluded that the nomination certificate was presented to the Secretary one day past the filing deadline. It rejected Appellants' argument that alleged tardiness in mailing notice of the filing prerequisites entitled it to present a filing *nunc pro tunc*. The court noted that no statute, regulation or case was cited to support the existence of a duty on the part of the Department to provide individual notice to political parties of prerequisites to a candidate's inclusion on the ballot. There was no showing that the notice actually sent to the party was not received several days prior to the filing deadline. Individual notice was provided by e-mail almost two weeks prior to the filing deadline, public notice was timely available on the Bureau's website and the requirements were readily accessible through the election law. *Green Party of Pa. v. Dep't of State Bureau of Comm'ns*, 43 M.D. 2017, unpublished memorandum at 4 (Pa. Cmwlth. filed February 15, 2017).

The Commonwealth Court refused to grant relief on Appellants' claim that a Bureau employee provided Kane with misinformation. Citing to *Carroll v. City of Philadelphia, Board of Pensions and Retirement Municipal Pension Fund*, 735 A.2d 141, 144 (Pa. Cmwlth. 1999), the court noted that a party generally cannot assert equitable estoppel to avoid application of a statute. Because in this case: (1) the prerequisites for appearing on the ballot were in the statute; (2) the Bureau had published the information on its website; and (3) timely notification was given to the party by e-mail and regular mail, "the basis for estoppel can, at best, be described as a misunderstanding arising out of a miscommunication." *Green Party*, *supra* at 5. Under these circumstances, the Commonwealth Court held that equitable estoppel did not apply.

The Commonwealth Court next addressed Appellants' contention that the Bureau misinterpreted as mandatory, rather than directory, the word "shall" as used in Section 629 of the Election Code: "[N]omination certificates . . . for the office of . . . Representative in the General Assembly shall be filed in the office of the Secretary of the Commonwealth not later than fifty (50) days prior to the date of the special election." 25 Pa.C.S. § 2779. With respect to this statutory construction argument, the Commonwealth Court concluded that the word "shall" as used in Section 629 of the Election Code is mandatory. It noted that in *In re Guzzardi*, 99 A.3d 381 (Pa. 2014), this Court cited, with approval, decisions from other jurisdictions that statutes employing mandatory language in filing deadlines for ballot access are deemed mandatory. Accordingly, the Commonwealth Court rejected Appellants' assertion that in the absence of any prejudice that would ensue from the requested relief, "shall" as used in Section 629 should be deemed directory rather than mandatory.

Having determined that Appellants had failed to establish a clear legal right to a writ of mandamus, the Commonwealth Court denied relief. Appellants filed a timely notice of appeal to this Court, and an expedited briefing schedule was established. On March 3, 2017 we issued a per curiam order affirming the Commonwealth Court, with Justices Donohue, Dougherty and Wecht dissenting.

Before addressing Appellants' equitable arguments in favor of an order directing the Commonwealth to accept the filing of the nomination certificate, we must first consider whether the certificate was timely filed. As noted, Section 629 of the Election Code requires that "nomination certificates . . . shall be filed in the office of the Secretary of the Commonwealth not later than fifty (50) days prior to the date of the special election." 25 P.S. § 2779. Also relevant is Section 103(e) of the Election Code, which provides:

In determining or reckoning any period of time mentioned in this act, the day upon which the act is done, paper filed, or notice given, shall be excluded from, and the date of the primary, election, hearing or other subsequent event, as the case may be, shall be included in the calculation or reckoning: Provided, however, That if the last day upon which any act may be done, paper filed, or notice given, shall fall on a Sunday or a legal holiday, the next following ordinary business day shall be considered as the last day for said purpose.

25 P.S. § 2603(e).

Here, the nomination certificate was required to be filed "not later than fifty days prior to" March 21, 2017, which was the date of the special election. In determining the relevant period of time, "the day upon which [the] paper is filed," here January 31, 2017, "is excluded from . . . the calculation." *Id.* However, "the date of the … election," March 21, 2017 is "included in the calculation." *Id.* Accordingly, adding the twenty-one applicable days of March to the twenty-eight days of February renders a period of forty-nine days. Because the date of the filing, January 31, 2017, is excluded, Appellants' nomination certificate had to be filed by January 30, 2017 in order to meet the fifty-day requirement of Section 629.[1] *See*, *In re Alexander*, 124 A. 419 (Pa. 1924) (excluding the date of a filing but including the date of the election when calculating an election-related time period). Therefore, the Bureau properly designated January 30, 2017 as the final day on which to file a nomination certificate.

Because the nomination certificate was untimely filed, we turn to Appellants' arguments in support of issuance of a writ of mandamus. Appellants assert that this case presents a matter of first impression because there are no reported decisions

---

[1] 

| March 1-21 | = | 21 days |
| February 1-28 | = | 28 days |
| January 31 | = | excluded |
| Total | = | 49 days |

where a candidate filed their nomination certificate late for a special election when they had previously been nominated by their party. They note that the nomination process for a special election is unique because rather than holding a primary election, parties nominate their candidate at a special convention. *See* Section 629 of the Election Code, 25 P.S. § 2779.

While Section 976 of the Election Code, 25 P.S. § 2936, sets forth specific reasons why nomination petitions, certificates and papers may be rejected, Appellants assert that the statute itself does not state that the Bureau can reject a document if it is not timely filed. However, we find this argument disingenuous because it ignores the introductory sentence of Section 976, which states, in relevant part: "When any . . . nomination certificate . . . is presented in the office of the Secretary of the Commonwealth . . . for filing *within the period limited by this act*, it shall be the duty of the said officer . . . to examine the same." 25 P.S. § 2936 (emphasis added). Because the statute provides that no "nomination certificate shall be permitted to be filed" if it contains enumerated defects, it follows that the Secretary must reject an otherwise valid nomination certificate if fails to meet the threshold requirement of being filed "within the period limited by this act." *Id*."

Appellants contrast the instant matter with *In re Bedow*, 848 A.2d 1034 (Pa. Cmwlth. 2004), where the Department of State rejected a nominating petition because some of the signatures were illegible and the nominating petition did not follow the format prescribed by the Secretary of State. The court noted that the Election Code is liberally construed to protect the candidate's right to run for office and the voters' right to elect the candidate of their choice. "However, provisions of the Election Code relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities, but are necessary measures to prevent fraud and to preserve the integrity

of the election process." *Id.* at 1037. Appellants argue that unlike *Bedow*, there is no dispute that Honkala was nominated at the Green Party convention as its candidate for the special election. Accepting her nominating certificate would not raise issues of fraud or question the integrity of the electoral process.

Appellants argue that by failing to interpret the Election Code liberally, the Commonwealth Court infringed on their First Amendment rights to ballot access. They argue there is a recognized need for minor political parties to be on the ballot, and that denying Honkala the opportunity is a great loss to the political system. They further note that the Commonwealth would not have suffered prejudice by accepting the nomination certificate one day late.

In a similar vein, Appellants challenge the Commonwealth Court's determination that equitable estoppel did not apply in this case. They urge this Court to consider that Kane relied on assurances from Sandy at the Department of State that everything was in order. Appellants assert that the reasonableness of their reliance on Sandy's assurances must be viewed in the context of the short period of time for filing nomination certificates. Appellants draw our attention to *Guzzardi*, *supra* at 383, n.3 where this Court explained that the Commonwealth Court found that an aide to Guzzardi was misled by an "unidentified young woman with dark brown hair" in the Department of State into believing that he did not need to file a statement of financial interests with the Ethics Commission. However, in reversing the Commonwealth Court, this Court rejected application of equitable principles because the Ethics Act specifically provides that the "[f]ailure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot." 65 Pa.C.S. § 1104(b)(3). Appellants correctly note that Section 629 of the Election Code, which addresses special elections, sets forth a fifty-day

requirement but does not contain the fatal defect language of the Ethics Act. Nevertheless, we are mindful that this Court has held: "[T]he judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair and efficient administration of public elections in Pennsylvania." *Guzzardi*, at 386.

Essentially, Appellants seek to have this Court exercise its equitable powers to excuse their late filing of the nomination certificate. The Commonwealth draws our attention to the fact that while the federal and state Constitutions limit the restrictions the General Assembly may impose on voters, candidates and political parties, the Commonwealth "may enact substantial regulation containing reasonable, non-discriminatory restrictions to ensure honest and fair elections that proceed in an orderly and efficient manner." *Banfield v. Cortes*, 110 A.3d 155, 177 (Pa. 2015). Here, the fifty-day filing deadline permits adequate time for certification of the candidates' names and addresses, mailing of absentee ballots, certification of voting machines, finalizing voting lists, and scheduling court hearings to decide objections.

The evidence does not show that the fifty-day deadline substantially burdened Appellants' rights. Rather, the evidence established that Appellants failed to consult the relevant statutes, did not check the Department's website, did not read the e-mail and attachments sent to the Green Party, and did not check the Green Party's post office box in a timely manner. Furthermore, rather than seeking critical information about the filing of a nomination certificate from someone in the elections division, Kane chose to consult with someone in the campaign finance division. Under these circumstances, the Commonwealth Court did not err in concluding that equitable relief was unwarranted.

To be entitled to a writ of mandamus, a petitioner must demonstrate a clear right to the relief sought, a corresponding non-discretionary duty of the public official, and the lack of an adequate and appropriate remedy at law. *Phila. Firefighters' Union, Local 22 v. City of Phila.*, 119 A.3d 296 (Pa. 2015). Because Appellants failed to comply with Section 629 of the Election Code, which required the nomination certificate to be filed by January 30, 2017, Appellants cannot demonstrate a clear right to relief. Accordingly, the order of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Baer and Dougherty join the opinion.

Justice Todd files a concurring opinion.

Justice Donohue files a dissenting opinion in which Justice Wecht joins.