J-S50016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DAVIS | : | |
| | : | |
| Appellant | : | No. 1770 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 8, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013163-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DAVIS | : | |
| | : | |
| Appellant | : | No. 1771 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 8, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012603-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DAVIS | : | |
| | : | |
| Appellant | : | No. 1772 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 8, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014499-2016

J-S50016-19

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                     FILED OCTOBER 11, 2019

James Davis (Appellant) appeals from the judgment of sentence imposed at three related trial court dockets:  CP-02-CR-0013163-2016 (No. 2016-13163) (jury trial) (1770 WDA 2018); CP-02-CR-0012603-2017 (No. 12603-2017) (guilty plea) (1771 WDA 2018); and CP-02-CR-0014499-2016 (No. 14499-2016) (guilty plea) (1772 WDA 2018).[1]  On appeal, Appellant claims that his conviction of voluntary manslaughter[2] is against the weight of the evidence, the Commonwealth failed to present sufficient evidence to disprove his claim of self-defense, his sentence is excessive, and his guilty pleas were induced by ineffective counsel.  Upon review, we affirm.

Preliminarily, we note the deficiencies in Appellant's brief.  First, the sole issue in Appellant's statement of question involved is improperly broad and vague:  "Did the trial court err in denying Appellant's post-trial motions?"  See

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant filed an appeal at each trial court docket, and each appeal was separately docketed in this Court.  Thus, the Supreme Court's decision in Commonwealth v. Walker is not implicated.  See Walker, 185 A.3d 969, 977 (Pa. 2018) (where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case).

[2] 18 Pa.C.S.A. § 2503(b).

- 2 -

Appellant's Brief at 6;[3] Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. . . . No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Additionally, Appellant's brief lacks a statement of the case, and fails to specify whether he raised his claims before the trial court. See Pa.R.A.P. 2117(a)(4), (b), (c)(1) ("The statement of the case shall contain . . . [a] closely condensed chronological statement, in narrative form, of all the facts which are necessary . . . to determine the points in controversy, with an appropriate reference . . . to the [pertinent] place in the record," "a balanced presentation of the history of the proceedings," and the place in the record where "the questions sought to be reviewed were raised."). Finally, the "argument" section is a verbatim reproduction of the second amended post-sentence motion filed by trial counsel Brandon M. Herring, Esquire.[4] Compare Appellant's Brief at 8-22 and

_____

[3] The copy of the brief filed electronically has two identical cover pages. These two pages, along with the next six pages, are all designated page "i." The first numbered page, which begins with the heading "Argument," is designated page "8." For ease of reference and to maintain the chronology of the numbered pages, we designate the front cover of Appellant's brief to be page 1, the next page (the identical copy of the cover) as page 2, etc.

[4] The only variations from the post-sentence motion are the numbering of some paragraphs, the addition of cites to Pennsylvania decisional authority that were not included in the post-trial motion, and the deletion of Attorney Herring's request, in the post-trial motion, to withdraw from representation. See Appellant's Brief at 12-16, 18-19, 21.

Appellant's Second Amended Post-Sentence Motion, 11/6/18, at 2-15. While the argument includes five cites to legal authority, there is no discussion of any legal principles or their application to this case. See Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); Appellant's Brief at 16, 18, 19, 21, 22. Appellant's argument fails to address the findings and reasoning set forth in the trial court's opinion, and does not articulate how the trial court allegedly erred. We remind appellate counsel that failure to develop an appellate argument, with citation to supporting authority and the record, may result in waiver. See Commonwealth v. Perez, 93 A.3d 829, 838 (Pa. 2014); Commonwealth v. Miller, 721 A.2d 1121 (Pa. Super. 1998) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof."). Nonetheless, in this case, where the brief includes some legal authority and we are able to discern Appellant's arguments, we do not find waiver.

Facts

The record reveals that Appellant fatally shot 19-year old Antonio Troutman (the victim), when the victim attempted to enter a car occupied by Appellant. At trial, Appellant claimed self-defense on the theory that two

- 4 -

armed individuals, including the victim, attempted to enter the car, after which a struggle ensued and Appellant shot the victim.  N.T. Trial, 5/14/18, at 429, 439, 440 (Appellant's closing statement).

Appellant's cousin, Paul Sanders, was with Appellant on the day of the shooting, and testified for the Commonwealth.  The trial court summarized Mr. Sanders' testimony as follows:

> On the morning of the [August 22, 2016] shooting, Sanders was driving his car, with his brother Naseem Rose in the front passenger seat and Appellant in the seat behind his brother. Sanders drove to his house at 123 Peebles Street in Wilkinsburg, and parked his car across the street from his house.  Sanders exited the vehicle, with the engine on, and went inside his house.

Trial Court Opinion, 4/10/19, at 5-6.

Meanwhile, the victim, along with Keishon Martin, Drayvawn Smith, and Avion Hayden, "were across the street from Mr. Sanders' home doing construction work at 128 Peebles Street."  Id. at 6.  The trial court summarized the testimony of Mr. Martin, who also appeared as a Commonwealth witness, as follows:

> [The four men] were taking a lunch break outside on the porch when they observed Mr. Sanders' vehicle park in front of 126 Peebles Street.  The car was parked on the same side of the street as the house where the men were working, with the passenger side of the vehicle closest to the curb.  . . . Keishon Martin saw the driver exit the vehicle and enter a house across the street from them.  He did not see anyone else in the car, but he noticed that the vehicle's engine was still running and that the car's windows were rolled up.
>
> At that point, Mr. Martin re-entered the house with Avion Hayden to continue working, while [the victim] and Mr. Smith remained outside.  Mr. Martin heard the sound of multiple

- 5 -

gunshots once he was back inside of the home. He testified that, after the gunshots ceased, he heard a car horn beeping. . . . Mr. Martin did not see [the victim] or Mr. Smith with a firearm or weapon that morning. Mr. Martin had known [the victim] and Mr. Smith for approximately a year, and he did not know either of them to carry firearms.

Trial Court Opinion, 4/10/19, at 6-7, citing N.T. Trial, 5/14/18, at 147-150, 153-154. However,

Mr. Martin was interviewed by police on the same day as the shooting, and he told police that [the victim] and Mr. Smith stated that they "were going to do a dip on that car," referring to Mr. Sanders' vehicle. According to Mr. Martin, a "dip" is a slang term meaning "gotta go" or "leave."

Trial Court Opinion, 4/10/19, at 7, citing N.T. Trial, 5/14/18, at 156-157. Mr. Martin's statement was memorialized in a police report, which the Commonwealth presented to Mr. Martin at trial. N.T. Trial, 5/14/18, at 156-157. However, Mr. Martin denied telling the police that the victim and Mr. Smith said they would "do a dip on [the] car." Id. at 157 ("I don't remember saying this."), 161 ("The police officer must have misheard."). Mr. Martin acknowledged that he did not want to testify, and that he was previously arrested on a material witness warrant for not cooperating in this case. Id. at 154, 162.

The Commonwealth also called Mr. Smith, who had been the victim's close friend. N.T. Trial, 5/14/18, at 254. The trial court summarized Mr. Smith's testimony:

Mr. Smith had been friends with [the victim] for a few years, and he considered them to be close. On the morning of the shooting, Mr. Smith was called over to "a work site" at 128 Peebles Street

where [the victim] was working with Keishon Martin and Avion Hayden. Mr. Smith was on the porch taking a lunch break when he observed a car park in front of the house. Like Mr. Martin, the only person [Mr. Smith] saw exit the vehicle was the driver, who crossed the street and entered a house. Mr. Smith also noticed that the car was left running with the windows rolled up. Due to the dark window tint, he did not see anyone else in the vehicle.

[The victim] then informed the group that he had to leave. [Smith walked toward the grassy area between 126 and 128 Pebbles Street.] Mr. Smith watched [the victim] walk towards the running vehicle, open the door, and get into the driver's seat. Within "two seconds" of [the victim] being inside of the car, Mr. Smith saw him quickly open the door and exit the vehicle, "touching his body" and saying "oh shit." As [the victim] was getting out of the car, Mr. Smith heard what he thought were fireworks, but then realized that the sound was actually gunshots.

. . . Mr. Smith walked towards the [victim to check on him. As he did so, Mr. Smith] saw the barrel of a gun being placed through a crack in the window, which prompted him to flee. Mr. Smith heard [5] or [6] gunshots that were spaced out, and he believed some of the shots were being fired in his direction. He saw [the victim] jogging away from the car before he himself fled. Mr. Smith testified that he did not possess a firearm that day and that he did not see [the victim] with a firearm that morning or when he got out of the car. Mr. Smith never knew [the victim] to carry a firearm.

Trial Court Opinion, 4/10/19, at 7-9 (footnote omitted), citing N.T. Trial, 5/14/18, at 255-258, 260-268, 274, 281-283, 285, 287, 288, 290, 295.

"Smith testified at trial pursuant to a 'Queen for a Day' letter, which promised him immunity for any criminal conduct related to the shooting in exchange for his testimony." Trial Court Opinion, 4/10/19, at 7 n.1; N.T. Trial, 5/14/18, 215-216. Mr. Smith also acknowledged that the Commonwealth had obtained two material witness warrants against him for his refusal to cooperate with the prosecution. N.T. Trial, 5/14/18, at 253. Mr. Smith was

incarcerated at the time of trial on one warrant, as well as unrelated pending charges. Id. at 254.

"After he was shot, [the victim] was able to travel approximately 141 feet away from Mr. Sanders' vehicle before collapsing in the parking lot of" a medical office. Trial Court Opinion, 4/10/19, at 10. Responding paramedics did not observe any weapons on or around the victim. The victim, who had suffered two gunshot wounds, was transported to the hospital, where he was pronounced dead. Id. at 10-11.

At trial, Appellant based his claim of self-defense on the testimony of his cousin, Mr. Sanders. The trial court explained:

> Mr. Sanders heard at least one (1) gun shot while he was inside of his house, and then he heard the sound of a car horn blaring. Mr. Sanders opened the door to the house and [yelled to Appellant] why he was beeping the horn. [Appellant] cracked the window and told him that they had to leave. Mr. Sanders re-entered his vehicle . . . and began driving [Appellant] to his mother's house[.] He estimated that only five (5) to ten (10) minutes had passed from the time he parked his car to the time that he returned to the vehicle. [Appellant] was still seated in the same position when Mr. Sanders returned.
>
> After driving for a couple of blocks, Mr. Sanders recognized a bullet hole in the driver's side door, which had not been present before that morning. He asked [Appellant] about the bullet hole, and [Appellant] told him that two (2) people tried to steal the car. [Appellant] stated that two (2) men approached the car from both the driver and passenger sides, and he shot the man trying to enter the vehicle from the driver's side of the car. [Later that day, Appellant] admitted to Mr. Sanders that he "got rid of the gun" after the shooting, but he did not specify how he disposed of it. [Appellant] did not call the police in his cousin's presence, nor did he ask him to call the police on his behalf.
>
> Realizing that his vehicle was implicated in a crime, Mr.

Sanders dropped [Appellant] off at his mother's house then drove directly to the Braddock police station to report that his vehicle had been involved in a shooting. Mr. Sanders first spoke with homicide detectives approximately two (2) hours after the shooting occurred. Mr. Sanders initially was hesitant to implicate [Appellant] because he was trying to protect his cousin, but he ultimately informed the police of [Appellant's] involvement within days of the shooting.

Trial Court Opinion, 4/10/19, at 11-12, citing N.T. Trial, 5/14/18, at 221-223, 307-309, 311-317, 319, 324, 326, 329.

Finally, the trial court summarized the police investigation:

Law enforcement conducted a thorough search of the crime scene area [and] did not locate a firearm or any other weapon on [the victim's] person or anywhere in the vicinity[.] Aside from a blood trail, no physical evidence was recovered from the outdoor crime scene area.

\* \* \*

Although it was impossible to detect which shot was fired first, the location of the gunshot wounds to [the victim] . . . was consistent with the scenario where [the victim] was shot as he attempted to enter and then exit the driver's side of the vehicle. The wounds were inconsistent with a scenario that entailed [the victim] reaching towards the backseat of the vehicle as part of a struggle. In rejecting the scenario where [the victim] was shot during a struggle, the [medical examiner] explained that it would not be possible to "turn and expose the right side of my back to the shooter if I'm going to throw a punch." In contrast, [the medical examiner] agreed that any movement of the arm toward the driver's side door area would have left the back exposed.

Trial Court Opinion, 4/10/19, at 12, 14, citing N.T. Trial, 5/14/18, at 76-78, 85, 94-95, 97-99, 206-207, 209-210, 342.

Procedural History

Appellant was charged at No. 2016-13163 with criminal homicide,

tampering with or fabricating evidence, and carrying a firearm without a license. A charge of persons not to possess firearms was severed and re-charged at No. 2017-12603. Additionally, Appellant was charged at No. 2016-14499 with receiving stolen property and possession with intent to deliver a controlled substance. These charges arose from Appellant's arrest inside his girlfriend's apartment on the day of the shooting; during a search of the apartment, police found heroin and a stolen gun.

The case at No. 2016-13163 proceeded to a jury trial on May 14, 2018. The Commonwealth called 19 witnesses, including Mr. Sanders, Mr. Smith, Mr. Martin, police detectives, the medical examiner, and experts in the fields of firearms, crime scene processing, and DNA analysis. Appellant did not testify or present any witnesses, but introduced one exhibit — Mr. Smith's "Queen for a Day" letter. N.T. Trial, 5/14/18, at 420.

At No. 2016-13163, the jury found Appellant guilty of voluntary manslaughter, tampering with evidence, and carrying a firearm without a license. Prior to sentencing on August 8, 2018, Appellant pled guilty to all charges at both No. 2017-12603 and No. 2016-14499. The trial court sentenced Appellant, at all three dockets, to an aggregate 15 to 30 years of imprisonment.

Appellant, represented by Attorney Herring, filed a timely post-sentence

motion on August 20, 2018,[5] challenging both the sufficiency and weight of the evidence as to his voluntary manslaughter conviction, as well as the length of his sentence. Appellant's motion further sought additional time to file an amended motion once he reviewed transcripts. The trial court granted Appellant an extension to September 28, 2018. Order, 8/22/18. On September 28th, Appellant filed a timely counseled amended motion. Although Appellant did not seek another extension, his counsel filed a second amended motion on November 6, 2018, adding a claim that counsel was ineffective, and in which counsel requested leave to withdraw from representation. The court granted counsel's request to withdraw and appointed current counsel.[6] Order,

_____

[5] The tenth day after sentencing was Saturday, August 18, 2018. See Pa.R.Crim.P. 720(A)(1) (generally, post-sentence motion shall be filed no later than 10 days after imposition of sentence). Appellant thus had until Monday, August 20th to file a timely post-sentence motion. See 1 Pa.C.S.A. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation); In re Nomination Papers of Lahr, 842 A.2d 327, 333 n.6 (Pa. 2004) (courts have generally employed § 1908 when applying Rules of Criminal Procedure).

[6] The trial court did not have jurisdiction to rule on any post-sentence motion that was filed after the extended deadline of September 28, 2018. See Commonwealth v. Dreves, 839 A.2d 1122 (Pa. Super. 2003) (en banc) (in the context of whether a notice of appeal was timely filed, "[t]he trial court's resolution of the merits of the late post-sentence motion is no substitute for an order expressly granting nunc pro tunc relief"). Nevertheless, where Appellant had initially filed a timely post-sentence motion, the trial court had not ruled on it, and the Commonwealth did not object, we do not disturb the trial court's November 8, 2018 order permitting Attorney Herring to withdraw or its November 14th order denying Appellant's second amended motion.

11/8/18. The court then denied the second amended post-sentence motion on November 14th. Appellant filed notices of appeal at each docket on December 14, 2018. Although the trial court did not require one, Appellant filed a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal. The trial court issued an opinion on April 10, 2019.

### Issues

In his statement of question involved, Appellant simply asserts that the trial court erred in denying his post-trial motions. Appellant's Brief at 6. Thus, we consider the more specific claims Appellant presents in his summary of the argument:

> 1. The verdict is against the weight and sufficiency of the evidence, is unsupported by law, or otherwise should have been set aside.
>
> 2. [Appellant] received an excessive sentence.
>
> 3. [Appellant's] counsel was ineffective as a matter of law by unlawfully inducing [Appellant's] guilty pleas and/or related waivers.

Id. at 7.

Appellant challenges both the sufficiency and weight of the evidence with regard to his voluntary manslaughter conviction, arguing that he presented a viable claim of self-defense. Appellant cites Mr. Sanders' trial testimony that Appellant told Mr. Sanders that two men tried to steal the car. Appellant contends that even if, as the Commonwealth argued, the victim was not armed, that fact was not relevant to whether Appellant acted reasonably.

Appellant's Brief at 12, 18. Appellant maintains that it is "reasonable for a person sitting in the backseat of a running car awaiting the return of the driver to believe that he was in danger of kidnapping, serious bodily injury or even death when a stranger climbed into the driver's seat." Id. at 11. Appellant also claims that Commonwealth witnesses Mr. Martin and Mr. Smith were not credible, where the Commonwealth had to obtain material witness warrants against both, and "the Defense impeached [Mr. Martin] with the prior [inconsistent] statement" about the "dip." Id. at 15, 17.

At its essence, Appellant's argument is (1) the evidence was insufficient to establish that the Commonwealth disproved Appellant's self-defense claim beyond a reasonable doubt; and (2) Appellant's conviction for voluntary manslaughter was against the weight of the evidence. We first examine Appellant's sufficiency claim. We have stated:

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed.

> Moreover, a jury may believe all, some or none of a party's testimony.

Commonwealth v. Burns, 765 A.2d 1144, 1148 (Pa. Super. 2000) (citations omitted).

Our Supreme Court has explained:

> To prevail on a justification defense, there must be evidence that the defendant "(a) . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."

Commonwealth v. Sepulveda, 55 A.3d 1108, 1124 (Pa. 2012) (citations omitted). "[A] defendant's subjective state of mind does not establish the objective factor of the reasonableness of his belief." Id. at 1125.

> Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense. In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: . . . that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony . . . . See 18 Pa.C.S.A. § 505(b)(2). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue.

Burns, 765 A.2d at 1149-1150 (some citations omitted). Further, a claim of self-defense may be refuted by evidence of a defendant's consciousness of guilt. Commonwealth v. Spotz, 84 A.3d 294, 316 (Pa. 2014).

In rejecting Appellant's claim that the Commonwealth failed to disprove self-defense, the trial court cited evidence that although the victim was "a stranger" who attempted to enter the car occupied by Appellant, "the police investigation did not indicate that [the victim] ever actually occupied the driver's seat," the victim "did not possess a weapon," and the only witness

who placed the victim inside the vehicle was Mr. Smith, who "testified repeatedly that [the victim] was only in the car for 'two seconds' before he was shot." Trial Court Opinion, 4/10/19, at 17-18. The court further reasoned that the evidence:

> evinced a strong consciousness of guilt. In the aftermath of the shooting, [Appellant] did not call 911 or otherwise attempt to report the shooting to authorities even though he claimed his life was in danger. [Appellant] did not even disclose the incident to Mr. Sanders until . . . Mr. Sanders questioned him about the bullet hole in his door. Even after Mr. Sanders informed [Appellant] that he had reported the shooting to the authorities, [Appellant] did not come forward to explain why he believed that the shooting was justified. Instead, [Appellant] discarded the weapon in an attempt to hide evidence from the police. [When Appellant was apprehended at his girlfriend's apartment] on the night of the shooting, [Appellant] was found trying to hide behind a television, and police had to force entry into the apartment in order to effectuate the arrest.

Id. at 18-19. The court concluded that when viewing the evidence in the light most favorable to the Commonwealth, "[t]he jury likely concluded that the mere act of opening a door and sitting inside of a vehicle without permission did not create a life-threatening situation" for Appellant. Id. at 22. The court also noted that while Appellant "may have held a sincere and bona-fide belief that deadly force was required," there was sufficient evidence for the jury to find that Appellant's subjective belief that he was in danger of death or serious bodily injury was "not objectively reasonable under the circumstances." Id. at 17, 24. Upon review, we find that the trial court's conclusions are supported by the record. Accordingly, we are not persuaded that the Commonwealth presented insufficient evidence to disprove Appellant's theory of self-defense.

See Spotz, 84 A.3d at 316; Burns, 765 A.2d at 1148-1150.

Appellant also claims that his conviction of voluntary manslaughter was against the weight of the evidence.

> "[A] true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but contends that the verdict was against the weight of the evidence." An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Credibility issues are decided by the jury and appellate courts rarely overturn jury factual findings that are based on credibility determinations. Indeed, an appellate court should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. Thus, we are confined to review if the trial court abused its discretion.

Burns, 765 A.2d at 1149-1150 (citations omitted). A jury is "free to believe all, part or none of the evidence presented and to assess the credibility of the witnesses." Id. at 1150.

> The crime of Voluntary Manslaughter occurs when a person kills an individual without lawful justification and at the time of the killing: 1) he is acting under a sudden and intense passion resulting from serious provocation by the individual killed, or 2) he intentionally or knowingly killed an individual under an unreasonable mistaken belief that the killing was justifiable. See 18 Pa.C.S.A. § 2503(a)(1).

Id. at 1150.

Appellant's assertion that Commonwealth witnesses Mr. Smith and Mr. Martin were not credible is meritless because the jury was free to believe all, part, or none of their testimony. See Burns, 765 A.2d at 1150. Thus, Appellant's suggestion that this Court supplant the jury's credibility findings

with our own is misplaced. Further, and as discussed above, the jury was free to conclude that Appellant's asserted belief that killing the victim was justifiable self-defense was not objectively reasonable. See id. at 1149-50. Accordingly, the trial court properly denied Appellant's weight claim.

Appellant's next claim is that his sentence is manifestly excessive. Appellant states that the trial court failed to consider his "particularized rehabilitative needs" — which Appellant does not articulate — and failed to consider that he "was not seeking a conflict in this matter," where he believed he was under threat of death or serious bodily injury. Appellant's Brief at 20. Appellant also cites "mitigation evidence" that his mother suffered from a chemical dependence while pregnant with him, he has a severe learning disability and is unable to work, he nevertheless "has independently made efforts to learn on his own throughout his life," and he and his mother were "raising a child that he originally believed to be his biological child." Id. at 20-21. This issue is waived.

A claim that a trial court failed to consider a defendant's rehabilitative needs or mitigating factors in fashioning a sentence is a challenge to the discretionary aspects of sentencing. Commonwealth v. Swope, 123 A.3d 333, 337 (Pa. Super. 2015). To preserve a discretionary challenge, an appellant must include "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence," pursuant to Pa.R.A.P. 2119(f). Id. "If a defendant fails to include an issue in

his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim." Commonwealth v. Robinson, 931 A.2d 15, 19 (Pa. Super. 2007).

Here, Appellant's brief does not contain a Rule 2119(f) statement, and the Commonwealth has objected. See Commonwealth Brief at 25. Accordingly, we are compelled to find waiver. See Robinson, 931 A.2d at 19.

In his fourth and final issue, Appellant avers that trial counsel was "generally ineffective in his preparation and defense." Appellant's Brief at 21. Appellant claims that but for "counsel's alleged ineffective advice, [Appellant] would have taken" the cases at No. 2017-12603 and No. 2016-14499 to trial, and that counsel promised Appellant he would receive concurrent sentences at each case and an overall sentence of 4 to 8 years of incarceration. Id. at 22.

It is well-settled that "ineffectiveness claims are generally not reviewable on direct appeal." See Commonwealth v. Baker, 72 A.3d 652, 665 (Pa. Super. 2013). Furthermore, "[p]rolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks." Id.

Here, the trial court did not address Appellant's ineffectiveness claims, and Appellant makes no claim that he has knowingly and voluntarily waived

review under the PCRA. Thus, as the Commonwealth argues, Appellant's claims of ineffective assistance of counsel are not properly before this Court on direct appeal. See Baker, 72 A.3d at 664-665; Commonwealth Brief at 27.

In sum, there is no merit to any of Appellant's claims, where the record supports the findings of the jury and the trial court, Appellant waived his sentencing claim, and his ineffective assistance of counsel claim is not properly before us. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2019